IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TONY ALLEN, JR.,

      Petitioner,                      No. CIV S-06-1923 FCD DAD P

    vs.

MARK SHEPARD,

      Respondent.                ORDER

                                /

        Petitioner is a state prisoner proceeding with a second amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner is represented in these proceedings by attorney Efren Williams. The second amended petition before the court challenges petitioner's 2001 conviction in the Sacramento County Superior Court for second degree murder (Cal. Penal Code § 187(a)) with a use of a firearm (Cal. Penal Code § 12022.53(b)-(d)). Respondent has filed an answer and petitioner has filed his traverse.

/////

---

[1] Petitioner filed his second amended petition on September 23, 2007. On April 14, 2008, the court signed a stipulation and order granting petitioner leave to file an indexed table of contents and authorities which were not included with his second amended petition. On April 17, 2008, petitioner re-filed his second amended petition which included his table of contents and table of authorities. See Doc. No. 45 (Second Am. Petition) at 39-43.

1

Now before the court are petitioner's motions for an evidentiary hearing (Doc. No. 48) and to expand the record (Doc. No. 51). Both motions are opposed by respondent. After setting forth the relevant background, below the court will address the latter motion first and then turn to the motion for an evidentiary hearing

BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal[2], the California Court of Appeal for the Third Appellate District provided the following factual summary:

> The incident that gave rise to the charges occurred on January 30, 1999. At that time, defendant was married to two women.[3] He had married Deborah 10 or 12 years before. At some time, he began living in Denver, Colorado, and then married Lateshia in 1997. Although defendant lived in Denver most of the time, it appears that when he visited Sacramento, he expected to enjoy the benefits of his marriage to Deborah.
>
> During 1998, neither wife enjoyed the benefits of defendant's company because he was incarcerated on a parole violation. During that time, Deborah formed a romantic relationship with the victim, David Bell. And she decided to dissolve her marriage to defendant.
>
> Defendant was released from incarceration in December 1998, and sometime around the beginning of 1999, Deborah told him that she was proceeding with a dissolution action. Defendant replied that a dissolution was just a piece of paper and that she would still be his wife. Bell wanted Deborah to tell defendant about their relationship. However, Deborah did not want defendant to find them together.
>
> On the day before the murder, Bell accompanied Deborah while she made the payment for her dissolution. The day of the murder, Bell and Deborah spent the morning together. The day before, defendant flew from Denver to Sacramento to pick up his Ford Expedition, which had been left in Sacramento for automotive work. While Deborah was out with Bell, her daughter

---

[2] Notice of Lodging Documents on May 12, 2008 (Doc. No. 54), Lod. Doc. 4.

[3] Defendant's wives sometimes used the last name Allen and other times used different names. For convenience and to avoid confusion, we will refer to them by their first names, Deborah and Lateshia.

called to advise that defendant was in town and had called. Bell wanted to find defendant to tell him that he and Deborah were together, but Deborah refused. Eventually, Bell left Deborah at her house and said he was going to Oakland and would see her later.

Some time after Bell left, defendant called and said he was coming to visit. Deborah told him she wanted him to take his possessions out of her house. Defendant visited Deborah that evening and stayed for several hours. Bell called and let Deborah know he was aware defendant was there. Bell wanted to talk to defendant, but Deborah refused. Bell told Deborah that she should tell defendant they were together or should stop seeing him, although his language was more colorful, and hung up. Moments later, Bell called back and defendant answered. After a short conversation, defendant hung up. He then left the house.

Bell drove to Deborah's house and parked on the street. After he got out of his car, he was shot. Most of the neighbors reported hearing three shots, and there were three expended shell casings found in front of Deborah's house. Bell was hit with two shots, one to the right side of his rib cage and one to the face. The shot to the face was the more serious wound. The bullet shattered teeth, passed through the tongue, and lodged in the neck, where it damaged the internal carotid artery.

Bell left a trail of blood while he went down the street seeking assistance. Bell received help from a neighbor who called 9-1-1. While they waited for emergency personnel to arrive, the operator asked what happened. Bell said he was shot by defendant, gave a brief description of the perpetrator and the location of the shooting, and said it was over a girl. He repeated these statements to the first police officer who arrived on the scene. Bell was taken to the hospital for emergency surgery. He survived for about two weeks until the attempted repairs to his carotid artery failed and he died.

After the shooting, defendant returned to Denver, where he obtained a driver's license and began living under the name of Antoine Holley. Denver police eventually learned that defendant was using the name Antoine Holley and began looking for him under that name. Defendant returned to Sacramento and was later arrested.

Initially, Deborah was cooperative with police investigators and made many statements implicating defendant in the murder. Deborah followed through on her dissolution action, and the marriage was dissolved on July 5, 2000. But as the proceedings progressed, Deborah and defendant reconciled. Deborah sought to avoid testifying and, obviously to that end, remarried defendant on July 19, 2001. Her testimony was replete with instances in which she testified contrary to her earlier statements, either denied or

3

> claimed not to remember her earlier statements, and asserted that the police investigators intimidated her and she was just telling them what they wanted to hear. Many of Deborah's earlier statements were admitted as prior inconsistent statements. (Evid. Code, § 1235.)

(Lod. Doc. 4 (Opinion) at 2-4.)

Petitioner's judgment of conviction was affirmed by the California Court of Appeal for the Third Appellate District. (Id. at 27.) On April 14, 2004 his Petition for Review was summarily denied by the California Supreme Court. (Lod. Doc. 6.) Petitioner filed pro se habeas petitions in state court in which he raised claims relating only to the alleged bias of the trial judge and a claimed <u>Brady</u> violation. (Lod. Docs. 7, 9 & 11.) Those petitions were all denied, culminating with the California Supreme Court's summary denial on July 26, 2006. (Lod. Doc. 8, 10, & 12.)

On May 30, 2006, Rick von Geldern executed a declaration in which he stated that he was the private investigator retained by trial counsel to work on petitioner's case. (<u>See</u> Lod. Doc. 13, Ex. 1.) Mr. von Geldern related in his declaration, among other things, some of the trial investigation he conducted in the case, investigation he did not conduct and directions he received from petitioner's trial counsel. (Id.) Petitioner's current counsel has represented that petitioner received the von Geldern declaration sometime in 2006, at around the same time current counsel was being retained.[4]

On August 25, 2006, counsel filed a petition for writ of habeas corpus with this court which included several admittedly unexhausted claims including claims of ineffective assistance of trial counsel and insufficiency of the evidence based at least in part upon the then-recently received von Geldern declaration. (Doc. No. 1.) On November 1, 2006, prior to the

---

[4] Counsel represents and that both he and petitioner notified the California Supreme Court of the intent to substitute counsel into the case at that time and to amend the habeas petition then before that court to include additional claims based upon newly discovered evidence. However, the California Supreme Court summarily denied the petition on July 26, 2006, before the amendment could be proposed.

4

filing of a response, petitioner's counsel filed a first amended habeas petition with the court expounding on his unexhausted claims. (Doc. No. 10.) In the first amended petition, counsel made clear that petitioner's unexhausted ineffective assistance of counsel claim included the allegation that trial counsel was deficient for having not adequately investigated potential defenses based on both alibi and self-defense. (Id. at 12-18.) In addition, that petition spelled out petitioner's claim that his trial counsel was ineffective in failing to utilize an independent forensic pathologist as a defense expert witness. (Id. at 18-23.) Finally, the amended petition included the unexhausted claim that there was insufficient evidence introduced at trial with respect to the cause of death of the victim to support petitioner's murder conviction.

On November 27, 2006, in light of the statement of non-opposition filed by respondent, this court granted petitioner's request for stay and abeyance to permit petitioner the opportunity to exhaust the admittedly unexhausted claims noted above before the California Supreme Court. (Doc. No. 12.) On December 23, 2006, counsel filed the exhaustion petition on petitioner's behalf with the California Supreme Court. (Lod. Doc. 13) The petition filed with the California Supreme Court set forth all of the new, unexhausted claims referred to above, included as Exhibit 1 the von Geldern declaration and requested that the California Supreme Court order an evidentiary hearing in connection with those claims. (Id.) The California Supreme Court denied the exhaustion petition, without conducting an evidentiary hearing, on July 11, 2007.

On August 21, 2007, this court issued an order lifting the stay. (Doc. No. 26.) On September 23, 2007, counsel for petitioner filed the second amended petition which contained all of petitioner's claims including the recently exhausted ineffective assistance of counsel and insufficiency of the evidence claims referred to above. (Doc. No. 29.) Petitioner's counsel also filed at that time his own declaration in support of the second amended petition with the von Geldern declaration, that had been submitted to the California Supreme Court in the exhaustion petition, as an exhibit. On February 20, 2008, counsel for respondent filed an answer

addressing petitioner's claims on the merits. (Doc. No. 38.) On May 2, 2008, counsel for petitioner filed a traverse. (Doc. No. 46.) On May 5, 2008, petitioner's counsel filed the two motion now pending before the court.

MOTION TO EXPAND THE RECORD

Petitioner seeks an order expanding the record before this court to include the declaration of defense investigator Rick von Geldern referred to above.[5] Respondent opposes the motion. In fact, the parties argue the matter at some length. Respondent contends that none of von Geldern's averments are new and that petitioner should have acted diligently by presenting the information to the state courts in a timely manner for their consideration. (Opp'n at 8.) Petitioner responds that there is no factual basis upon which to conclude that he did not act diligently in obtaining the declaration and that Rule 7 of the Rules Governing Section 2254 cases provides for expansion of the record here. (Id. at 6-8.)

Whatever merit the parties' arguments on this point may have in some situations, they completely miss the mark here. The von Geldern declaration was submitted by petitioner's counsel to the California Supreme Court as part of the exhaustion petition filed with that court. (See Lod. Doc. 13, Ex. 1.) The California Supreme Court had that declaration before it when it denied the exhaustion petition which included petitioner's previously unexhausted ineffective assistance of counsel claims. The declaration is, and for some time has been, part of the record properly before this court. In ruling on the pending petition, the court will therefore consider the declaration and its contents for whatever it may be worth.[6] However, petitioner's motion to expand the record will therefore be denied as unnecessary.

---

[5] In that regard, petitioner's counsel has again submitted the declaration to this court. As noted above, it was previously filed as part of the exhaustion petition with the California Supreme Court and as part of the second amended petition in this court.

[6] The court notes that respondent has not moved to dismiss the second amended petition before this court on any procedural ground but instead has filed an answer addressing petitioner's claims on the merits.

6

## MOTION FOR AN EVIDENTIARY HEARING

Petitioner's motion for an evidentiary hearing is equally curious. In the motion petitioner states only that he

> intends to hold a hearing regarding the factual bases (sic) of two claims before the Court: 1) Ineffective assistance of counsel regarding trial counsel's failure to adequately investigate and possible defenses, and 2) Ineffective assistance of counsel regarding trial counsel's failure to utilize an expert witness for the defense.

(Pet'r Mem. P. & A. in Supp. of Mot. for Evidentiary Hr'g (Doc. No. 47) (hereinafter "MEH") at 2.) Petitioner suggests that if an evidentiary hearing were to be granted, he would plan to offer von Geldern's testimony but does not indicate what more von Geldern could testify to than is in his declaration which is already part of the record before this court. (Id.) Other than this vague pronouncement, counsel states only that with respect to petitioner's claim of ineffective assistance based upon the failure to call an expert witness, he "intends to utilize an expert witness conversant with prevailing standards of professional care and diligence regarding criminal defense." (Id. at 3.)[7]

Respondent opposes the motion, arguing that petitioner has not met his burden of establishing that an evidentiary hearing is necessary. (Opp'n at 1-2.) That single argument is persuasive.[8]

Title 28 U.S.C. 2254(e)(2) sets forth the circumstances under which a habeas petitioner is entitled to an evidentiary hearing. Under the statutory scheme, a district court

---

[7] In his reply, petitioner alludes to no additional evidence that he would propose to offer an evidentiary hearing.

[8] Respondent in large part opposes the motion on the grounds that petitioner is not entitled to an evidentiary hearing because he cannot ultimately prevail on his ineffective assistance of counsel claims for a variety of reasons and because he has not established diligence in pursuing those claims. Such arguments, of course, draw a lengthy retort from petitioner's counsel in his reply. As is the case with the motion to expand the record, in the court's view, all of these arguments advanced by the parties miss the mark by a wide margin.

presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing might be appropriate. Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir.1999); see also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir.2005). Here, petitioner has not demonstrated that any additional facts need be determined for a fair resolution of the merits of any of his claims. Petitioner refers only to two potential witnesses without suggesting in any way what helpful testimony they might give. With respect to private investigator von Geldern, his declaration is already in the record before this court. See Williams v. Woodford, 384 F.3d 567, 590, 607 (9th Cir. 2004) ("[A] district court in a habeas corpus proceeding need not conduct full evidentiary hearings but may instead expand the record . . . with discovery and documentary evidence.") As for petitioner's suggestion that the court hear expert testimony addressing the prevailing standards of professional care and diligence regarding criminal defense, such vaguely described testimony is unnecessary here. See Bonin v. Calderon, F.3d 815, 838 (9th Cir. 1995) (A judge is "qualified to understand the legal analysis required by Strickland.").

Thus, petitioner has failed to overcome the initial hurdle identified above.[9]

---

[9] In the event petitioner were to again seek an evidentiary hearing prior to the court's issuance of a decision on the pending petition, he is advised that respondent is correct that in determining whether to grant an evidentiary hearing under 28 U.S.C. § 2254(e)(2), the court must apply the AEDPA deferential standards to legal and factual questions necessarily reached by the state courts. Schriro v. Landrigan, 550 U.S. 465, ___, 127 S. Ct. 1933, 1940 (2007). With respect to the exercise of diligence in developing the record, however, the court would note that petitioner requested an evidentiary hearing from the California Supreme Court in connection with these same claims. See Williams v. Taylor, 529 U.S. 420, 437 (2000) ("Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in the state court in the manner prescribed by state law.") Finally, the court notes that respondent has not filed with this court either the Clerk's Transcript on Appeal nor the Reporter's Transcript on Appeal including the transcript of the proceedings on petitioner's motion for a new trial. See Order filed October 15, 2007. Petitioner has cited portions of the trial transcript in support of his claims. Because petitioner is represented by counsel, the court will direct petitioner to file the Clerk's Transcript on Appeal and the Reporter's Transcript on Appeal, including the transcript of the proceedings on petitioner's motion for a new trial, with the court or to inform the court why he should not be required to do so.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Petitioner's May 5, 2008 motion for evidentiary hearing (Doc. No. 48) is denied without prejudice;

2. Petitioner's May 5, 2008 motion for expansion of the record (Doc. No. 51) is denied as unnecessary; and

3. Within twenty days from the service of this order, petitioner shall file with the court, the Clerk's Transcript on Appeal and the Reporter's Transcript on Appeal or inform the court why he should not be required to do so..

DATED: March 28, 2009.

*/s/ Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
allen1923.evidhrgexpand2